**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAPITAL DIALYSIS, LLC<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BEVERLY ENTERPRISES - DISTRICT OF COLUMBIA, INC. d/b/a NORTHWEST HEALTH CARE CENTER,<br>and<br>BEVERLY HEALTH AND REHABILITATION SERVICES, INC. d/b/a NORTHWEST HEATH CARE CENTER,<br><br>　　　　　Defendants. | Civil Action No. _____ |

## <u>NOTICE OF REMOVAL</u>

TO THE JUDGES AND THE CLERK OF THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA:

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. § 1441(a), defendants Beverly

Enterprises - District of Columbia, Inc. d/b/a Northwest Health Care Center ("Beverly

Enterprises") and Beverly Health Rehabilitation Services, Inc., d/b/a Northwest Health Care

Center ("Beverly Health"), hereby remove this action from the Superior Court of the District of

Columbia to the United States District Court for the District of Columbia. The grounds for

removal are as follows:

1.　　　Plaintiff Capital Dialysis, LLC ("Capital Dialysis") filed this action in the

Superior Court of the District Columbia, Civil Action No. 0003639-07, on or about May 29,

2007. The complaint alleges five state law causes of action: breach of contract, breach of

implied covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent

misrepresentation, and negligent misrepresentation.  Cmplt. ¶¶ 42-83.  Plaintiff seeks $2 million in compensatory damages.  Cmplt. at 17, ¶ a.

2.    Defendants Beverly Enterprises and Beverly Health were served with the summons and a copy of the complaint on May 30, 2007.  This Notice of Removal is thus filed within 30 days of the first date of receipt of a copy of the Summons and Complaint by any defendant and is timely pursuant to 28 U.S.C. § 1446(b) and Rule 6(a) of the Federal Rules of Civil Procedure.  All process, pleadings, notices and orders served upon Beverly Enterprises in this action, including the Summons and copy of Complaint, are attached hereto as Exhibit 1.

3.    Plaintiff Capital Dialysis is a limited liability company organized under the laws of the District of Columbia.  Cmplt. ¶ 5.  Capital Dialysis' principal place of business is located at 140 Q Street, N.E., Washington, DC, 20002.  Cmplt. ¶ 5.

4.    Defendant Beverly Enterprises is a corporation organized under the laws of the State of California with a principal place of business in Ft. Smith, Arkansas.  *See* Exhibit 2.

5.    Defendant Beverly Health is a corporation organized under the laws of the State of California with a principal place of business in Folsom, California.  *See* Exhibit 3.

6.    The defendants referenced in paragraphs 4-5 are the only defendants named in the Complaint.  Therefore, there is complete diversity between the parties.

7.    Because this civil action is between citizens of different States, as those terms are used in 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

8.    Because this Court has original jurisdiction, based on the diversity of the parties, of this civil action, the cause is removable to this Court pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, defendants respectfully request that this action be removed from the Superior Court of the District of Columbia to this Court.

Respectfully submitted,


_____/s/_____

Andrew A. Nicely (D.C. Bar No. 458805)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
anicely@mayerbrown.com

*Counsel for defendants Beverly Enterprises - District of Columbia, Inc. and Beverly Health Rehabilitation Services, Inc.*

Dated:  June 15, 2007

## CERTIFICATE OF SERVICE

I, Andrew A. Nicely, hereby certify that, on this 15th day of June, 2007, I caused a true and correct copy of the foregoing Notice of Removal to be served by first-class mail, postage prepaid, upon:

> Jeffrey L. Poston, Esq.
> Crowell & Moring, LLP
> 1001 Pennsylvania Avenue, N.W.
> Suite 200
> Washington, D.C. 20004
>
> *Counsel for plaintiff*

_____/s/_____
Andrew A. Nicely



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

CAPITOL DIALYSIS LLC
   Vs.                        C.A. No.      2007 CA 003639 B
BEVERLY ENTERPRISES- DISTRICT OF COLUMBIA, INC

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MARY A TERRELL
Date:  May 29, 2007
Initial Conference: 9:15 am, Friday, August 31, 2007
Location:  Courtroom 219
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001  Telephone: 879-1133

| | |
|---|---|
| Capitol Dialysis, LLC | |
| *Plaintiff* | Civil Action No. **0003639-07** |
| **vs.** | |
| Beverly Enterprises--District of Columbia, Inc. a/k/a Beverly Health and Rehabilitation Services, Inc., et. al. | |
| *Defendant* | |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Jeffrey L. Poston, Crowell & Moring, LLP |
|---|
| Name of Plaintiff's Attorney |
| 1001 Pennsylvania Ave., N.W. Suite 200 |
| Address |
| Washington, DC 20004 |
| 202-624-2500 |
| Telephone |

By _____
Deputy Clerk

Date May 29, 2007

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL DIALYSIS LLC<br>140 Q Street, NE<br>Washington, DC 20002,<br><br>        Plaintiff,<br><br>    v.<br><br>BEVERLY ENTERPRISES -<br>DISTRICT OF COLUMBIA, INC.<br>a/k/a BEVERLY HEALTH AND<br>REHABILITATION SERVICES,<br>INC. d/b/a NORTHWEST<br>HEALTH CARE CENTER<br>3333 Wisconsin Avenue, NW<br>Washington, DC 20016,<br><br>and<br><br>BEVERLY HEALTH AND<br>REHABILITATION SERVICES,<br>INC. d/b/a NORTHWEST HEALTH<br>CARE CENTER<br>3333 Wisconsin Avenue, NW<br>Washington, DC 20016,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

0003639-07

Case No. _____

RECEIVED
Civil Clerk's Office
MAY 2 9 2007
Superior Court of the
District of Columbia
Washington, D.C.

### COMPLAINT

Plaintiff, Capitol Dialysis LLC ("Capitol"), by and through undersigned counsel, Crowell & Moring, hereby files this complaint against the above-named Defendants, Beverly Enterprises – District of Columbia, Inc. a/k/a Beverly Health and Rehabilitation Services, Inc. d/b/a Northwest Health Care Center and Beverly

Health and Rehabilitation Services, Inc. d/b/a Northwest Health Care Center (collectively, "Northwest"), and alleges and states as follows:

## NATURE OF THE ACTION

1.    This action arises out of Northwest's breach of its contractual and fiduciary obligations to Capitol resulting in damages exceeding $2 million. Northwest and Capitol entered an agreement whereby Capitol provided in-house dialysis services to Northwest's nursing home residents for a twenty year term. The parties' relationship was so intertwined that Northwest held a seat on Capitol's Governing Body and thus, a voice in Capitol's governance.

2.    Northwest partnered with Capitol to attract nursing home residents to its nursing home facility by providing on-site dialysis services. In return, Capitol agreed to dedicate the resources necessary to provide dialysis services to Northwest's residents for the twenty year term. The patients benefited the most as they no longer had to be transported from the nursing home to various ambulatory dialysis centers located throughout the District of Columbia.

3.    In 2006, Northwest decided to sell the nursing home facility; yet concealed this decision from Capitol. Northwest informed the District of Columbia regulators that it planned to close its nursing facility knowing that the District of Columbia regulators would prohibit Northwest from admitting any additional patients to its facility. The District of Columbia regulators issued such an order and Northwest stopped admitting new patients after February 2007.

2

Northwest fully understood that this action would have a catastrophic effect on Capitol's business. Yet, Northwest did not notify Capitol of its decision to close the facility and cease admitting new patients until it was a *fait accompli*. Accordingly, Capitol had no ability to timely and efficiently transition its operations and workforce into a new facility, housing a commensurate number of dialysis patients. It will take at least a year until Capitol is fully operating in a new facility, treating the same number of patients as it treated at Northwest.

4.     As a result of Northwest's breach of its contractual and fiduciary duties, Capitol is losing and will continue to lose substantial sums. Each month the losses increase until ultimately there will be no patients to treat. Moreover, Capitol will be paying higher rent to the new facility for the 15 years remaining under the Northwest lease. Northwest's breach of its duties will result in damages to Capitol exceeding $2 million.

## THE PARTIES

5.     Plaintiff Capitol Dialysis LLC is a District of Columbia limited liability company with its principal place of business at 140 Q Street, NE, Washington, DC 20002.

6.     Defendant Beverly Enterprises – District of Columbia, Inc. a/k/a Beverly Health and Rehabilitation Services, Inc. d/b/a Northwest Health Care Center is a California corporation with a place of business at 3333 Wisconsin Avenue, NW, Washington, DC 20016.

3

7.     Defendant Beverly Health and Rehabilitation Services, Inc. d/b/a Northwest Health Care Center is a California corporation with a place of business at 3333 Wisconsin Avenue, NW, Washington, DC 20016.

## JURISDICTION

8.     This Court has jurisdiction pursuant to D.C. CODE ANN. § 11-921(a)(6). This court has jurisdiction over Defendant Northwest pursuant to D.C. CODE ANN. § 13-423.

## STATEMENT OF FACTS

### A.    Capitol and Northwest

9.     Capitol is a provider of high quality dialysis services to renal patients living in Washington, D.C.  It is a joint venture owned by Jay Ocuin, M.D. and Anthony Bivins, M.D. (practicing nephrologists in Washington, D.C.) and American Renal Associates, Inc. of Beverly, Massachusetts.  Capitol is committed to providing high quality dialysis services and building long-term relationships with patients, staff, local providers, and other members of the Washington, D.C. renal community, including local nursing facilities.

10.    Northwest is a duly licensed, 355-bed skilled nursing facility.  It is owned and operated by Beverly Healthcare, Inc., ("Beverly"), one of the largest operators of nursing facilities in the United States.

11.    Beverly has operated Northwest since 1981.  From 1981 until 2000, an average of fifteen patients per month required dialysis services at Northwest.

4

**B.    Northwest's Desire and Need for Capitol's Services**

12.    Prior to 2001, Northwest operated a traditional nursing home without specialty dialysis services provided on its premises. During this time period, Northwest housed many residents who required dialysis services. Those patients needed to be transported to out-patient dialysis centers located throughout the District of Columbia for their dialysis treatment. The District of Columbia, Northwest and the dialysis patients themselves bore the cost for this transportation.

13.    In 2001, Northwest and Capitol met to discuss the possibility of Capitol operating a dialysis center on Northwest's premises. The parties agreed that locating a dialysis center in Northwest's facility would benefit all parties by attracting more residents to Northwest. In addition, the patients would receive higher quality treatment without the inconvenience of traveling to outpatient dialysis centers throughout the city. Indeed, the in-house dialysis unit would save money, in the form of eliminating travel costs, for both Northwest and its dialysis patients.

14.    The parties agreed in principle to partner and provide dialysis services to Northwest's residents. To consummate this partnership, however, Capitol first had to obtain a Certificate of Need ("CON") from the District of Columbia government.

15.    A CON is a condition precedent to obtaining a license to operate a healthcare facility. The CON review process is costly insofar as it involves multiple

detailed submissions and in this case testimony before the regulators from representatives of both Capitol and Northwest. On August 10, 2001, after Northwest attested to the long-term nature of the proposed partnership, the District of Columbia government issued Capitol a CON to operate a dialysis center on Northwest's premises.

16.    Thereafter, the parties entered an agreement whereby Northwest leased a portion of its premises to Capitol to provide dialysis services to Northwest's residents.

## C.    The Lease Agreement Between Northwest and Capitol

17.    On or about December 28, 2001, Capitol and Northwest entered into the Lease Agreement for a 1,200 square foot area on the south end of the main floor of Northwest's nursing facility. The parties intended for Capitol to locate six dialysis stations within this space.

18.    This is not a classic landlord-tenant relationship where a landlord in the commercial real estate business picks a commercial tenant from an unrelated industry to lease space. Rather, Northwest is in the nursing home business and leased space to Capitol to provide dialysis services to its nursing home residents. The parties had a clear agreement that Capitol would invest significant sums in establishing a dialysis center on Northwest's premises. Northwest agreed to ensure the economic viability of this venture by providing access to its patients for, at minimum, twenty years.

6

19.    The Lease provides for a twenty year term – "an initial five (5) year term, commencing upon the execution of this Lease Agreement (the "Execution Date") and shall automatically renew for three (3) additional five (5) year terms."

20.    The Lease lacks a termination provision, rendering it a 20 year unbreakable obligation.

21.    Pursuant to the Lease, Capitol pays Northwest One Thousand Fifty Dollars ($1,050.00) monthly for rental of the Premises.

D.    **Capitol Incurs Substantial Expenses In Establishing The Dialysis Operation**

22.    The parties contemplated that Capitol would establish a functioning dialysis center within the Northwest Facility.  Northwest fully understood that Capitol would incur substantial expenses to establish the six dialysis stations within the facility.

23.    For example, dialysis centers require special plumbing, expensive equipment and trained clinicians.  This construction required under slab plumbing, extensive electrical work, and reverse osmosis water purification.

24.    In addition, Capitol invested in other equipment for the facility, including computer equipment, office equipment, furniture and fixtures, and Capital made substantial leasehold improvements to the facility.  Capitol's improvements to the facility cost approximately $309,000.00.

**E.** **To Cement Further the Relationship, Northwest Receives A Seat on Capitol's Governing Body**

25.     Because the parties would be working to jointly provide healthcare services to Northwest residents, they decided to operate as transparently and as closely as possible.  In this vein, Northwest accepted a seat on Capitol's Governing Body.  Northwest's Executive Director, James J. Gerrity, accepted this seat on Capitol's Governing Body and was later succeeded in this position by Joyce Jones.

26.     Capitol's Governing Body holds quarterly meetings and oversees the clinical and operational activities of Capitol.  Northwest was routinely notified of the Governing Body's meetings and attended these meetings.

27.     With a seat on this Governing Body, Northwest had full access to Capitol's operational information and its future expectations with respect to its relationship with Northwest.

28.     Providing Northwest with a seat on Capitol's Governing Body permitted Capitol and Northwest to communicate directly and openly about the direction of their joint venture and the needs of their patients.

**F.** **Northwest and its Residents Reap Immediate Benefits from the Capitol Partnership**

29.     Capitol's on-site presence allowed Northwest to advertise enhanced services for prospective patients and it became a preferred location for local physicians to refer patients to in the area.

30.     Moreover, Capitol's presence allowed Northwest to meet the needs of its patients requiring renal dialysis by improving the quality of care, increasing

flexibility, focusing on patient needs, and emphasizing physician involvement in the provision of renal dialysis service in a single location.

31.    For example, prior to Capitol's arrival, most of Northwest's residents were transported to their dialysis center in a van paid for by the Medicaid program and the patients themselves. The significant transportation time for these patients caused an undue amount of stress and inconvenience to the dialysis patients. Opening the Capitol on-site dialysis center at Northwest eliminated this travel time and significantly decreased the additional burdens placed upon the patients undergoing dialysis.

32.    Upon Capitol's establishment of its in-house dialysis facility, both Northwest's daily census of dialysis patients and its occupancy rate substantially increased. Indeed, the number of monthly patients requiring dialysis services grew from 15 prior to 2001 to approximately 36 per month from 2003 through 2007.

## G.    Northwest Breaches Its Contractual and Fiduciary Obligations

33.    Upon information and belief, in 2006, at least six months prior to informing Capitol, Northwest decided to close down its facility and to sell the building.

34.    During this time period, Capitol convened Governing Body meetings.

35.    Yet, Northwest's representative on Capitol's Governing Body never disclosed to Capitol that Northwest had decided to close the facility and sell the building during these meetings or at any other time.

36.    Moreover, Northwest approached the District of Columbia regulators and informed them that it intended to close its nursing facility. Upon information and belief, Northwest expected the District of Columbia regulators to issue an order forbidding any new patients or residents from being admitted to Northwest after February 2007. Upon information and belief, Northwest did not admit any new patients to its facility after December 2006. In March 2007, the District of Columbia regulators issued an order forbidding Northwest from admitting any new patients to its facility.

37.    Had Northwest disclosed this information to Capitol in a timely fashion, Capitol could have begun a search for a new facility and transitioned its workforce and equipment in an orderly and economically efficient manner. Because Northwest did not disclose its decision to close and cease admitting patients until March 2007, Capitol had no ability to avoid substantial damages.

## H.    Capitol Will Sustain Substantial Damages

38.    Since Northwest stopped accepting new patients after December 2006, Capitol's revenue and profits have decreased by approximately twenty percent per month. Those losses will increase and within months all of Northwest's patients will be transferred to other facilities. Capitol, however, will not yet be operational in a new facility. This will result in monthly losses of at least $105,000.00.

39.    As a result of Northwest's breach of its contractual and fiduciary obligations and the closing of its nursing facility, Capitol has had to sign a new lease for a new location located in a different part of the District. Capitol's rent at

10

the new location is approximately $2,400.00 more per month than the rent at Northwest's facility. This difference will amount to approximately $432,000.00 more in rental payments through the remaining 15 year term of the Northwest lease.

40.    As a result of Northwest's breach, Capitol will have to incur "build-out" costs for its new dialysis center at its new location including, but not limited to, moving expenses, purchase of new equipment, and efforts to obtain a new CON from the District of Columbia to operate the new center.

41.    Pursuant to the Lease, Capitol is entitled to its reasonable attorneys' fees and court costs from Northwest incurred in this matter.

## CAUSES OF ACTION

### COUNT I
### (Breach Of Contract)

42.    Capitol re-alleges and incorporates each of its allegations set forth in Paragraphs 1 through 41 of this Complaint as if fully stated herein.

43.    The parties entered into an agreement whereby Capitol leased space in Northwest's facility for a term of twenty years. The agreement does not include a termination provision.

44.    The parties did not solely establish a landlord-tenant relationship with the agreement. Rather, the purpose and intent of this agreement between the parties was for Capitol to provide dialysis services to Northwest's nursing home residents and for Northwest to provide Capitol with a patient base for the twenty year term of the agreement.

11

45.    These additional terms requiring the provision of dialysis services to Northwest's residents for the entirety of the twenty year term are clearly implied in fact terms created by the parties' oral and written understanding and subsequent course of conduct.

46.    Capitol has at all times materially fulfilled its obligations under this agreement.

47.    Northwest materially breached its agreement with Capitol by announcing that the nursing facility would close and no longer accept new patients.

48.    Northwest knew that Capitol had invested substantial sums into the Northwest operation and that its profitability depended upon Northwest remaining open.

49.    Northwest also knew that without sufficient notice of the decision to close the facility, Capitol could not efficiently and fully transition without incurring substantial losses.

50.    Yet, Northwest also materially breached its agreement by failing to provide notice to Capitol of its decision to close and sell the facility.  Rather, Northwest announced its decision as a *fait accompli* and immediately ceased admitting new patients.

51.    As a direct and proximate result of Northwest's breach, Capitol has suffered damages in excess of $2,000,000.00, plus interest, in an amount to be precisely determined at trial.

## COUNT II
## (Breach Of Implied Covenant Of Good Faith And Fair Dealing)

52.    Capitol re-alleges and incorporates each of its allegations set forth in Paragraphs 1 through 41 of this Complaint as if fully stated herein.

53.    District of Columbia law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the District of Columbia.

54.    Northwest breached the covenant of good faith and fair dealing by breaching its contractual obligations without giving Capitol any advance notice of the change in circumstances that would substantially and materially impact Capitol.

55.    Specifically, Northwest knew months before it notified Capitol that it intended to close the facility and cease admitting new patients.  Yet, Northwest failed to inform Capitol of these decisions, knowing it would adversely affect Capitol.

56.    Northwest's concealment of these material facts contravenes the spirit and intent of the agreement between Northwest and Capitol.

57.    As a result of the actions of Northwest, Capitol is entitled to damages exceeding $2 million, plus interest, the exact amount to be determined at trial.

## COUNT III
## (Breach of Fiduciary Duty)

58.    Capitol re-alleges and incorporates each of its allegations set forth in paragraphs 1 through 41 of this Complaint as if fully stated herein.

59.    Northwest held a seat on Capitol's Governing Body.

13

60.    As a result, Northwest participated in Capitol's governance and was fully acquainted with the factors affecting Capitol's profitability.

61.    As a member of Capitol's Governing Body, Northwest had a fiduciary duty to disclose fully any information that could adversely impact Capitol.

62.    Upon information and belief, Northwest knew, at minimum, six months before announcing to Capitol, that it intended to close the facility, cease admitting new patients and sell the building.

63.    Yet, Northwest did not inform Capitol of its decision until it was too late for Capitol to mitigate effectively its damages.

64.    As a result, Northwest breached its fiduciary duty and its duty as a member of Capitol's Governing Body.

65.    As a result of these breaches, Capitol has incurred substantial damages of at least $2 million, the exact amount to be determined at trial.

## COUNT IV
### (Fraudulent Misrepresentation)

66.    Capitol re-alleges and incorporates each of its allegations set forth in paragraph 1 through 41 of this Complaint as if fully stated herein.

67.    Northwest and Capitol entered into the twenty year agreement whereby Capitol would provide dialysis services to Northwest's patients and Northwest would provide a patient base.

68.    Upon information and belief, Northwest knew at least six months prior to informing Capitol that it intended to close its facility. As Capitol's business

14

partner and a member of Capitol's Governing Body, Northwest had an obligation to disclose its decision to close the facility.

69.    Northwest knew that its decision to shut down its nursing facility would materially, adversely and substantially affect Capitol.

70.    Yet, Northwest chose to fraudulently conceal its plans to shut down its facility until the decision had already been reached and partially implemented. Northwest's silence constituted a representation that the relationship remained unchanged. This representation was false.

71.    Northwest knew that by continuing to supply patients to Capitol after deciding to close the facility would lull Capitol into believing that nothing had changed in this business relationship.

72.    Northwest's ongoing misrepresentation and concealment from Capitol about the closing of its facility was intentional, willful, fraudulent, with intent to deceive and in conscious disregard for the rights of Capitol.

73.    Capitol justifiably and reasonably relied upon Northwest's intentional and fraudulent omissions and concealments.

74.    As a result of this fraudulent misrepresentation and concealment of these material facts, Capitol has incurred substantial damages of at least $2 million, the exact amount to be determined at trial.

## COUNT V
## (Negligent Misrepresentation)

75.    Capitol re-alleges and incorporates each of its allegations set forth in paragraphs 1 through 41 of this Complaint as if fully state herein.

76.     Northwest and Capitol entered into the twenty year agreement whereby Capitol would provide dialysis services to Northwest's patients and Northwest would provide Capitol with a patient base.

77.     Upon information and belief, Northwest knew at least six months prior to informing Capitol that it intended to close its facility.  As Capitol's business partner and a member of Capitol's Governing Body, Northwest had an obligation to disclose its decision to close the facility.

78.     Northwest knew or should have known that its decision to shut down its nursing facility would materially, adversely and substantially affect Capitol.

79.     Yet, Northwest chose to conceal its plans to shut down its facility until the decision had already been reached and partially implemented.

80.     Northwest knew or should have know that it was making a false representation by failing to disclose to Capitol that it was closing its facility.

81.     Northwest knew or should have known that by continuing to supply patients to Capitol after deciding to close the facility would lull Capitol into believing that nothing had changed in this business relationship.

82.     Capitol justifiably and reasonably relied upon Northwest's negligent omissions and concealments concerning the parties' agreement and business arrangement.

83.     As a result of this negligent misrepresentation of these material facts, Capitol has incurred substantial damages of at least $2 million, the exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Capitol Dialysis LLC respectfully prays that this Court:

a.    Enter judgment in favor of Capitol and against Northwest for damages incurred by Capitol as a consequence of Northwest's breach of its contractual and fiduciary duties and its fraudulent concealment, in an amount to be determined by the Court based upon evidence presented to it, such amount to be no less than $2 million plus interest;

b.    Award Capitol its reasonable attorneys' fees and costs incurred in bringing and maintaining this Complaint and action against Northwest; and

c.    Award Capitol such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Capitol Dialysis LLC hereby demands a trial by jury on all issues so triable.

Dated:  May 29, 2007                          Respectfully submitted,

Jeffrey L. Poston, Esq. (D.C. Bar #426178)
Todd J. Cochran, Esq. (D.C. Bar #503343)
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 624-2500
(202) 624-5116 (fax)

Counsel for Plaintiff Capitol Dialysis LLC



**DISCLAIMER:** The information displayed here is current as of JUN 01, 2007 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| BEVERLY ENTERPRISES - DISTRICT OF COLUMBIA, INC. | | |
| **Number:** C1117913 | **Date Filed:** 7/23/1982 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| ONE THOUSAND BEVERLY WAY | | |
| FORT SMITH, AR 72919 | | |
| **Agent for Service of Process** | | |
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE | | |
| PO BOX 526036 | | |
| SACRAMENTO, CA 95852 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

**California Business Portal**

Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of JUN 01, 2007 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| BEVERLY HEALTH AND REHABILITATION SERVICES, INC. | | |
| **Number:** C0470444 | **Date Filed:** 5/11/1964 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 381 S LEXINGTON DR STE 100 | | |
| FOLSOM, CA 95630 | | |
| **Agent for Service of Process** | | |
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE | | |
| PO BOX 526036 | | |
| SACRAMENTO, CA 95852 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

07-p73
RF

---

**I. (a) PLAINTIFFS**

Capital Dialysis, LLC

1001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

District of Columbi

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jeffrey L. Poston, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

**DEFENDANTS**

Beverly Enterprises - District of Columbia, Inc. d/b/a Northwest Health Care Center and

Beverly Health and Rehabilitation Services, Inc. d/b/a Northwest Health Care Center

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-01073
Assigned To : Friedman, Paul L.
Assign. Date : 6/15/2007
Description: Contract

JURY ACTION

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
● 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ● 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**      **OR**      ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions <br> (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans <br> (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ⊙ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☒ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

○ 1 Original Proceeding    ⊙ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1331

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 2,000,000.00    Check YES only if demanded in complaint

JURY DEMAND:    YES ☒    NO ☐

## VIII. RELATED CASE(S) IF ANY

(See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 6/15/07    SIGNATURE OF ATTORNEY OF RECORD    _Andrew A. [signature]_

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.