IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPITOL DIALYSIS LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1073 (PLF) |
| ) | |
| **BEVERLY ENTERPRISES -** ) | |
| **DISTRICT OF COLUMBIA, INC.** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

# ERRATA

Plaintiff Capitol Dialysis LLC ("Capitol") respectfully submits this Errata to its Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Opposition"), filed with the Court on September 24, 2007.

On pages 5-6, 12, 14, and 18 of the Opposition, Capitol refers to and cites its Certificate of Need ("CON"). The CON, attached as Exhibit B to its Opposition, however, is an incorrect CON. Attached hereto is the correct CON, which should be substituted for the document currently attached as Exhibit B to Capitol's Opposition.[1]

---

[1] Capitol mistakenly attached the CON for a different location to the Opposition instead of the CON applicable to operating six dialysis stations at Defendants' facility, dated August 10, 2001.

2

Dated: November 5, 2007				Respectfully submitted,


						/s/ Jeffrey L. Poston
						Jeffrey L. Poston
						Todd J. Cochran
						Crowell & Moring, LLP
						1001 Pennsylvania Avenue, N.W.
						11th Floor
						Washington, DC 20004
						(202) 624-2500
						(202) 628-5116 (fax)
						jposton@crowell.com

2

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Department of Health**

State Health Planning and
Development Agency



August 10, 2001

Kathleen M. Stratton, Esq.
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Re:   Proposal by Capitol Dialysis, LLC. to Establish a Six-Station Renal Dialysis Facility
      at Northwest Health Care Center – Certificate of Need Registration No. 00-3-2

Dear Ms. Stratton:

The D.C. State Health Planning and Development Agency (SHPDA) has approved your application for a Certificate of Need (CON) as referenced above. A statement of findings and the Certificate of Need are enclosed.

Please note that any person may request reconsideration of the review decision within 30 days of this decision. The SHPDA may grant a reconsideration request upon demonstration of "good cause", as defined in Certificate of Need Regulations 22 DCMR 4312.

Thank you very much for your cooperation during the review period. If you have questions concerning this matter, please do not hesitate to contact me.

Sincerely,

*[signature: Lorraine Riley]*
for Andrew Schamess, M.D.
Acting Director

AS:dlm

Enclosures

cc:   Herbert Weldon
      Denise Pope
      Michael Johnson

---

GOVERNMENT OF THE DISTRICT OF COLUMBIA
Department of Health

State Health Planning and
Development Agency



DISTRICT OF COLUMBIA
STATE HEALTH PLANNING AND DEVELOPMENT AGENCY (SHPDA)
Notice of Official Action
Certificate of Need
Number 00-3-2

Capitol Dialysis, LLC is hereby awarded this Certificate of Need in conformance with the District of Columbia Certificate of Need statute, DC Law 11-191, to establish a six-station outpatient renal dialysis facility at Northwest Healthcare Center to provide dialysis services solely to the residents of the nursing home.

This issuance is based on all specifications contained in the Certificate of Need application and related documents in the record. Deviations from the specifications are allowable pursuant to the statute. The capital expenditure associated with this project is $200,000. The State Health Planning and Development Agency herewith makes all findings applicable to this issuance as required by the statute (DC Law 11-191).

This Certificate of Need is valid until August 20, 2002 unless: (1) its issuance is revoked following a public hearing held for reconsideration of this issuance in accordance with DC Law 11-191, Section 13, or further proceedings in accordance with DC Law 11-191, Section 14 or 15; (2) it is withdrawn in accordance with DC Law 11-191, Sections 12 or 13; or (3) it is terminated because the State Health Planning and Development Agency has certified that operations may begin, in accordance with DC Law 11-191, Section 10(j).

Unless this Certificate of Need has been revoked, withdrawn, or terminated, quarterly progress reports must be submitted to the State Health Planning and Development Agency on November 20, 2001, February 20, 2002; May 20, 2002 and August 20, 2002.

Notification of the proposed date for the initiation of operation of the facility or service approved here should be provided to the State Health Planning and Development Agency

---

825 North Capitol Street, N.E., 3rd Floor, Washington, D.C. 20002   (202) 442-5875

2

no later than thirty days prior to the proposed date for the initiation of operation so that the review required by DC Law 11-191, Section 10(j) may be conducted.

Signed this 10th day of August, 2001.

Sincerely,

*[signature: Lorraine Riley]*
*for* Andrew Schamess, M.D.
Acting Director


AS:dlm

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Department of Health**

State Health Planning and
Development Agency



**DISTRICT OF COLUMBIA**
**STATE HEALTH PLANNING AND DEVELOPMENT AGENCY**
**CERTIFICATE OF NEED REVIEW**
**FINDINGS IN THE MATTER OF:**
**CAPITOL DIALYSIS, LLC**
**CERTIFICATE OF NEED REGISTRATION NO. 00-3-2**

The findings contained in this document were developed in conformance with Certificate of Need (CON) review criteria required by Law 11-191, Section 10, and contained in regulations, 22 DCMR 4050 et. seq. These findings reflect my assessment of the information in the project record, and its consistency with the applicable considerations, standards and criteria for CON review. These findings are based on all specifications contained in the CON application and all related documents and testimony submitted to the record.

The findings take into account the recommendations of both the Project Review Committee and the Statewide Health Coordinating Council (SHCC) in their respective deliberations on July 12, 2001 and August 2, 2001.

A.   **Overview of the Applicant and the Proposed Project**

According to the Applicant, Capitol Dialysis LLC was established to own and operate outpatient dialysis facilities that provide high quality services to renal patients living in the greater Washington, D.C. area. Capitol Dialysis is a joint venture owned by Jay Ocuin, M.D. and Anthony Bivins, M.D. (practicing nephrologists in Washington, D.C.) and American Renal Associates, Inc. (ARA) of Welesley Hills, MA. American Renal Associates, Inc. and Drs. Ocuin and Bivins have entered into a joint venture

---

- 2 -

relationship and formed a District of Columbia limited liability company known as Capitol Dialysis, LLC. American Renal Associates, Inc. is a member of the LLC and holds a 60% ownership interest. Drs. Ocuin and Bivins each hold a 20% ownership interest in the LLC. All profits and losses will be shared according to the ownership percentages. Drs. Ocuin and Bivins will serve as Co-Medical Directors of the proposed center. As Medical Directors, Drs. Ocuin and Bivins, the Applicant states, will be responsible for the provision of high quality professional care to the patients. Drs. Ocuin and Bivins have been practicing in the District of Columbia for over 20 years and are aware of the special needs of the renal patients in this area. The Applicant maintains that under the co-medical directorship of Drs. Ocuin and Bivins, Capitol Dialysis is committed to providing high quality dialysis services and building long term relationship with patients, staff, local hospitals and other members of the Washington, D.C. renal community.

On July 20, 2000, Capitol Dialysis, LLC was issued a certificate of need to establish a 15-station outpatient dialysis facility at 140 Q Street, N.E. The facility has recently begun providing services.

The Applicant is now proposing to establish a six-station outpatient dialysis facility at the Northwest Healthcare Center to provide dialysis services solely to the residents of the nursing home. The Applicant states that it has agreed to join forces with the Northwest Healthcare Center to provide care to dialysis patients in the nursing home. The services will be provided by Capitol Dialysis and Northwest's clinical staff will play no direct role in the provision of dialysis services. According to the Applicant, however, Capitol Dialysis and Northwest will work together to provide joint education and training sessions on a quarterly basis. The Executive Director of Northwest will also be appointed to the Governing Body of Capitol Dialysis. The capital expenditure

- 3 -

associated with the project is $ 200,000, and the services are scheduled to become operational 4-5 months after issuance of CON.

B.  **Review Findings of Fact and Conclusion**

1.  **Need for the Proposed Project:**

The Applicant maintains that there are several advantages to providing renal dialysis services in nursing homes. First, nursing home patients, who are sick and frail may receive services on site and would not have to endure the hardship of traveling to and from outpatient centers. Second, the services will result in fewer costs to the health care system because transportation expenses will not be incurred. In addition, the Applicant maintains that the provision of the services in the nursing home will be acceptable to patients and their families.

The Applicant states that the nursing home currently has 13 dialysis patients and that the numbers over the years have ranged from 10 to 23 dialysis patients at any given time. The Applicant further maintains that the number of dialysis patients in the nursing home is likely to increase once the dialysis facility is established.

The Applicant states that Northwest's dialysis patients are currently treated at eight (8) different centers in the District and in Maryland. As a result, the Applicant maintains that the facility will have minimal impact on existing outpatient facilities. It states that the 22 patients projected to be served in year one represent only 1.6% of the total dialysis population in the District and will not negatively affect existing providers. The Applicant further argues that the positive impact the proposed facility will have on the quality of life of the patients will outweigh the minimal impact on existing providers.

- 4 -

In addition, the Applicant maintains that the proposed project is consistent with the draft Health Systems Plan chapter on dialysis services which recognizes the need for establishing dialysis station in nursing homes.

In summary, the Applicant states that:

1. Under the existing health care delivery system in the District, nursing home residents in need of dialysis services are forced to travel long distances and endure several hours away from the home, three days each week.

2. Nursing home residents who are on dialysis are among the most chronically ill, often suffering from multiple medical conditions in addition to their renal disease. Travelling outside of the nursing facility for up to seven hours each treatment day places these residents at additional clinical risk of injury and further medical complications.

3. The District of Columbia, Northwest Health Center, and the dialysis patient's family are forced to incur considerable expenses each year in transportation costs under the current delivery system for dialysis patients residing in nursing homes.

4. The six stations proposed in this project will serve only the residents of Northwest and thus will have minimal, if any, impact on existing providers of dialysis services in the District.

5. The six stations can be established at Northwest at no cost to the District, and will not result in any increase in the cost of delivering dialysis services to the residents of Northwest. To the contrary, cost will significantly decrease with the

- 5 -

elimination of the transportation services and with the reduction in lengths of stay in the acute inpatient hospital setting for these patients.

After a careful review of the Application, staff has concluded, and I concur, that the Applicant has demonstrated the need for the project. The provision of dialysis services in the nursing home will enhance the accessibility and continuity of care of the services. It is particularly helpful to the patients who are frail and who require assistance with daily living. The proposal is also consistent with the End-Stage Renal Disease Services chapter of the Health Systems Plan. The Plan recognizes that the provision of dialysis services in nursing homes has become an issue because sicker patients are being admitted to these institutions. The Plan states that the provision of dialysis services in nursing facilities would be more acceptable to the patients and less expensive for the healthcare system. Patients who are extremely sick and frail may receive services on site and would not have to endure the hardship of travel. The Plan further indicates that the services would result in lower costs because transportation costs would not be incurred to transport patients to outpatient dialysis facilities.

2.   **Accessibility:**

The Applicant states that the services will be readily accessible to their intended users – nursing home residents. There will not be transportation barriers or entrance and exit issues associated with the project. The six stations will be accessible to all patients in the nursing home who require dialysis services.

The Applicant further states that the services will be provided to all patients regardless of their age, race, sex and ability to pay. The stations will operate 10 hours each day, six days a week. Two treatment shifts will be scheduled each day and each patient will receive services either on a Monday – Wednesday – Friday shift or a Tuesday –

- 6 -

Thursday – Saturday shift. According to the Applicant, there will be no barriers to obtaining services and the facility will be accessible to the handicapped. Bilingual personnel will be available as needed.

Based on the above, I am satisfied that the application is consistent with the criteria and standards for accessibility of services.

3.  **Quality:**

According to the Applicant, Capitol Dialysis will institute a quality assurance program that incorporates the standards for delivery of quality dialysis treatment as established by the Network and the Renal Physicians Association. It maintains that the management possesses extensive experience in providing quality renal services. Members of the management of the parent company have been responsible for developing dialysis systems and procedures, technical standards and performance indicators that have been widely-adopted by the industry. Capitol Dialysis will coordinate its quality assurance program with Northwest's in order to achieve a consistent approach to quality control that meets the requirements of both entities.

The Applicant further states that the staffing ration proposed for the six (6) stations is 1:3 staff to patient, which is in compliance with D.C. standards. A nurse manager and technical manager will coordinate the staffing process. Staffing will include registered nurses, technicians, social workers, dieticians and other professionals.

The Applicant states that Capitol Dialysis and Northwest have agreed to work together to provide joint education and training sessions on a quarterly basis directed to the clinical staffs of Northwest and Capitol Dialysis. These sessions will include specific training in the care of the geriatric patient, and the impact of ESRD and dialysis

- 7 -

treatment on the elderly. Testing will be done on an annual basis to ensure the effectiveness of the training.

The Applicant maintains that a Quality Improvement (QI) program will be developed that is built around the medical information system, Capitol Dialysis's own clinical policies and procedures, and Northwest's quality improvement process. All clinical policies and procedures will be reviewed and approved by the Co-Medical Directors Jay Ocuin, M.D. and Anthony Bivin, M.D. and the Governing Body of Capitol Dialysis, which includes Northwest's Executive Director. Furthermore, a multi-disciplinary team comprised of the Center's Medical Directors, Nurse Manager, Technical Manager, Social Worker and the Dietitian will meet at least once a month as members of the Quality Assurance/Continuous Quality Improvement (QA/CQI) Committee. This committee will also be responsible for overseeing and implementing the quality improvement program including review of all pertinent logs for water quality.

The Applicant states that the Capitol Dialysis Co-Medical Directors have substantial experience in the provision of renal dialysis services and are well qualified to evaluate the care provided at Northwest. They will conduct an on-going review of the care being provided and submit a monthly report to the QA/QI Committee.

The Applicant also states that the stations at Northwest will be equipped with state-of-the-art dialysis equipment, an information system that will coordinate all patient information, lab results and treatment data, and a highly qualified management team.

I am, therefore, satisfied that the application is consistent with the criteria and standards for quality of care.

- 8 -

## 4. Continuity:

According to the Applicant, the establishment of the six (6) dialysis stations at Northwest will have a positive impact on the continuity of care provided to the dialysis patients residing there. Under the existing delivery system, the Northwest Health Care Center has responsibility for the plan of care and the delivery of services to each patient. Yet, three times each week, Northwest dialysis patients are physically removed from the facility for several hours each day, where another health care provider provides dialysis services. The Applicant states that having dialysis stations on-site as proposed in this application, will allow Northwest to play a much more active role in the delivery of services to its dialysis patients. Northwest's Executive Director will sit on the Board of Directors of Capitol Dialysis, the Capitol Dialysis staff will interact daily with the Northwest staff, allowing for a much frequent and open exchange of clinical information about the dialysis patients' condition, ensuring that medications will not be missed or delayed due to travel, and thereby improving the continuity of care.

In the discussion of continuity of care, the Applicant particularly refers to Northwest's rehabilitation patients who are also on dialysis. These patients are admitted to Northwest, typically following an acute care hospital stay, in order to receive skilled nursing level rehabilitation. This rehabilitation program involves three hours of physical/occupation therapy each day. Because the rehab patients who are also on dialysis are required to leave the nursing facility three times each week, for several hours each day, to receive dialysis, the Applicant maintains that these patients miss nine (9) days of therapy during the course of a twenty-one (21) day stay. While Northwest's therapy staff makes every effort to engage the dialysis patients in the therapy sessions on the days they receive dialysis treatments, the patients are typically

- 9 -

too exhausted to do so after the dialysis treatment itself, coupled with the long hours in being transported (and waiting to be transported) to and from Northwest.

The Applicant, therefore, maintains that approval of this application will greatly enhance the ability of Northwest to maintain proper continuity of care to its patients in a single location in the nursing home.

The Applicant states it will establish transfer and coordination agreements with the Washington Hospital Center and Providence Hospital to assure continuity of care for the patients. Northwest already has in place transfer agreements with Georgetown, George Washington University, Washington Hospital Center and Providence Hospital among others.

Based on the above, I find the application consistent with the criteria and standards for continuity of care.

5. **Acceptability:**

The Applicant states that it will develop a Patients Rights and Responsibilities mechanism that will provide for consumer participation. It is its intention to provide each patient within the first three weeks of treatment, a patient satisfaction questionnaire that solicits comments and/or grievances they may have about the services received. The Medical Directors will address any significant complaints received. In addition, any letter from a patient complaining of the medical care received, billing issues or other services will be promptly answered in writing through the grievance procedure outlined at the facility. The Applicant further states that the consumer grievance process will be coordinated with the process implemented by Northwest for its residents.

- 10 -

The Applicant reports that it has provided written notification to ANC 3C09 about the proposed project. It also states that it will keep ANC 3C09 apprised of all future developments with this project. While the SHPDA has not received any correspondence from the ANC, it has received a letter from the Washington Hospital Center in support of the proposed project.

In a public hearing that was held on May 21, 2001, the Applicant and representatives of the nursing home provided testimony in support of the proposed project. The Applicant stated that it is committed to the provision of quality care services to the residents of the nursing home. The Applicant also stated that the services will be available only to the residents of the nursing home. The Executive Director of the nursing home discussed the problems that the nursing home patients face when they have to be transported to outpatient centers for their dialysis. He said that at any given time during his tenure there have been between 10 and 22 residents on dialysis. He believes that once the proposed services are established the number of dialysis patients in the nursing home is gong to increase. Noting the physical and emotional impact of travel on the patients, he expressed his support for the establishment of the services in the nursing home. Other members of the nursing home staff also expressed support for the project. They particularly discussed the hardships that patients endure to receive services in freestanding outpatient facilities.

I am, therefore, satisfied that the project is consistent with the criteria and standards for acceptability of services.

- 11 -

## 6. <u>Financial Feasibility</u>

The Applicant states that the proposed project will cost approximately $200,000. The funds include $76,000 in leasehold improvements and $124,000 represents the fair market value of the equipment which will be leased. The Applicant plans to lease approximately 1200 square feet of space on the first floor of the nursing home. The Applicant states that it has the funds to implement the project. The Applicant further states that the project will generate more revenues than expenses. I have, therefore, determined that the application is consistent with the criteria and standards for financial viability.

## C. <u>Compliance With Uncompensated Care Requirements:</u>

The Applicant has stated its commitment to provide free care to needy patients. I am, therefore, satisfied that the Applicant is consistent with the requirements.

## D. <u>Conclusion:</u>

After a careful review of the application, the staff report, as well as the recommendations of the Project Review Committee (PRC) and the Statewide Health Coordinating Council (SHCC), I have determined that the Applicant has demonstrated the need for the proposed project. The establishment of the dialysis services will enhance the accessibility and continuity of care to the nursing home residents that require dialysis. As the draft chapter of the Plan recommends, the establishment of dialysis services in nursing homes will be more acceptable to the patients and less expensive for the healthcare system. I have, therefore, decided that Capitol Dialysis, LLC be issued a certificate of need to establish a six-station outpatient dialysis facility

- 12 -

at Northwest Healthcare Center to provide services <u>only</u> to the residents of the nursing home.

August 10, 2001
Date

*[signature: Lorraine Riley]*
for Andrew Schamess, M.D.
Acting Director